**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STEPHANIE LOZOYA, individually, and,
as Personal Representative of the Wrongful Death
Estate of Arthur Lozoya; LATOYA LOZOYA;
ARTURO LOZOYA; and MARIA SAAVEDRA,

      Plaintiffs,

v.                                    Civil Action No. _____
                                            Jury Trial

UNITED STATES OF AMERICA,

      Defendant.

**PLAINTIFFS' COMPLAINT FOR DAMAGES UNDER
THE FEDERAL TORT CLAIMS ACT**

### Introduction

1.      This is an action against the Defendant United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq.* and 28 U.S.C. § 1346(b)(1), for negligence and professional malpractice in connection with medical care provided to Arthur Lozoya, deceased, by the Department of Veterans Affairs at the Raymond G. Murphy VA Medical Center in Albuquerque, New Mexico.

2.      The claims herein are brought against the Defendant pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, *et. seq.*) and 28 U.S.C. § 1346(b), for wrongful death and personal injury, and loss of consortium caused by the Defendant's negligence and by the negligence of Defendant's employees, agents, and apparent agents.

3.      This suit has been timely filed, in that Plaintiffs timely served notice on the Department of Veterans Affairs less than two years after the incident forming the basis of this suit.

4.      Plaintiffs received the Department of Veterans Affairs' letter "denying all the tort claims," on June 22, 2016, and now file this Complaint within six months of receipt of that letter.

## Parties

5.      Plaintiff, Stephanie Lozoya, is a resident of Bernalillo County, New Mexico.

6.      Plaintiff, LaToya Lozoya, is a resident of Bernalillo County, New Mexico.

7.      Plaintiff, Arturo Lozoya, is a resident of Bernalillo County, New Mexico.

8.      Plaintiff, Maria Saavedra, is a resident of Bernalillo County, New Mexico.

9.      Defendant United States of America, including its directors, officers, operators, administrators, employees, agents, and staff at the Raymond G. Murphy VA Medical Center are hereinafter collectively referred to as the "Albuquerque VAMC."

10.     At all times relevant to this Complaint, the Albuquerque VAMC held itself out as a provider of high-quality healthcare services, with the expertise necessary to provide adequate treatment to patients like Arthur Lozoya.

11.     At all times relevant to this Complaint, directors, officers, operators, administrators, employees, agents, and staff at the Albuquerque VAMC were employed by and/or acting on behalf of the Defendant.  Furthermore, the Defendant is responsible for the negligent acts of its employees, agents, and apparent agents under *respondeat superior*.

## Jurisdiction and Venue

12.     Jurisdiction is proper under 28 U.S.C. § 1346(b).

13.     Venue is proper in the District of New Mexico because all, or a substantial part of the acts and omissions forming the basis of these claims, occurred in the District of New Mexico.

**Factual Allegations**

14.     On or about January 10, 2014, Arthur Lozoya was admitted to the Albuquerque VAMC with a clinical diagnosis of pneumonia.

15.     During the course of his stay, several other serious health problems became evident but they were not fully evaluated and they did not resolve prior to Mr. Lozoya's discharge.

16.     Among other things, during his hospitalization, Mr. Lozoya demonstrated the following conditions:

        a.     Cardiac arrhythmias, including conduction system abnormalities and ventricular ectopy;

        b.     Severe sleep apnea with oxygen desaturation, even on supplemental oxygen;

        c.     Clinical signs and symptoms suggestive of congestive heart failure;

        d.     Abnormal cardiac enzymes suggesting possible ischemic myocardial disease.

        e.     Elevated creatinine phosphokinase levels at the time of admission.

17.     Mr. Lozoya was discharged home on or about the third hospital day, before many, if not all, of these serious medical conditions had resolved.

18.     Mr. Lozoya died in his home approximately 57 hours after discharge from the Albuquerque VAMC.

**Negligence By Healthcare Providers**

19.     Among other things, Defendant, by and through it employees, agents, and apparent agents, failed to:

      a.     Properly implement continuous cardiac monitoring, conduct a sleep study, and other necessary cardiac studies, including, but not limited to, cardiac catheterization, in response to Mr. Lozoya's cardiac arrhythmias, conduction system abnormalities, and ventricular ectopy;

      b.     Properly evaluate and treat Mr. Lozoya's significantly elevated creatinine phosphokinase levels at the time of his admission;

      c.     Conduct a BNP or Echocardiogram.

20.    Among other things, the negligence of the Albuquerque VAMC healthcare providers caused Mr. Lozoya's death, and resulting wrongful-death damages.

**Institutional Failings and Negligence**

21.    Among other things, the Albuquerque VAMC had a duty to use ordinary care to avoid or prevent what a reasonably prudent person would foresee as an unreasonable risk of injury or death to its patients.

22.    The Albuquerque VAMC had a duty to provide veterans with quality healthcare.

23.    The Albuquerque VAMC had a duty to adopt, maintain, and implement policies, procedures, and protocols, to protect its patients from unreasonable risks of injury or death.

24.    Mr. Lozoya's death stemmed from systematic and institutional failures of the Albuquerque VAMC, resulting in multiple breaches of the standard of care, and in Mr. Lozoya's death.

25.    The Albuquerque VAMC is and was in 2014 an unreasonably dangerous place to receive medical care, with an excessive rate of medical errors and oversight stemming from system-wide failures related to poor hiring, training, retention, and supervision of staff.

26.     Despite evidence to the contrary, the Albuquerque VAMC advertises itself as an excellent medical provider with excellent patient care.

27.     The systemic failures and negligence of the Albuquerque VAMC, include, but are not limited to:

        a.     Exhibiting disregard for patient well-being, by instituting cost-cutting measures that result in fewer, less qualified, insufficiently trained, and insufficiently supervised staff;

        b.     Short changing staff pay and benefits, and placing unreasonable demands on staff, resulting in a hostile relationship between management and staff, less cooperation among staff, and poorer patient outcomes;

        c.     Failing to support staff with the necessary resources and training to enable them to execute their jobs properly;

        d.     Creating an environment that discourages, rather than fosters, teamwork and collegiality among hospital staff;

        e.     Failing to maintain policies, practices, and protocols to ensure communication between healthcare providers regarding patient care and treatment;

        f.     Failing to implement policies and procedures to ensure that patients with serious medical conditions are discharged safely, and not prematurely;

        g.     Failing to implement policies and procedures to ensure that hospital staff adequately prepare, plan, and coordinate post-hospitalization care;

        h.     Failing to have adequate policies, procedures, protocols, and safeguards in place to prevent what happened to Mr. Lozoya from happening.

28.     If the Albuquerque VAMC does not correct these institutional failures, other patients, like Mr. Lozoya, will die unnecessarily.

29.     These failures on the part of the Albuquerque VAMC caused Arthur Lozoya's death and resulting wrongful-death damages.

**Damages**

Compensatory Damages

30.     Acting through its employees, agents, and/or apparent agents, Defendant's wrongful conduct caused Plaintiffs' injuries and resulting damages.

31.     The Estate of Arthur Lozoya is entitled to all damages allowed by New Mexico law, including:  (A) the reasonable expense of necessary medical care and treatment and funeral and burial; (B) The pain and suffering experienced by the deceased between the time of injury and death; (C) the lost earnings, the lost earning capacity and the loss of household services in the past, and the present cash value of his lost earnings, lost earning capacity, and lost household services in the future; (D) lost employment benefits for his spouse in the past, and the present cash value of those lost employment benefits in the future; and (E) the value of Arthur Lozoya's life apart from his earning capacity.

32.     Maria Saavedra suffered injuries and damages in the past and in reasonable probability will suffer injuries and damages in the future, including: damages for loss of consortium, for emotional pain and suffering, and for the loss of the value of her partner's services.

33.     Stephanie Lozoya suffered injuries and damages in the past and in reasonable probability will suffer injuries and damages in the future, including: damages for loss of consortium, for emotional pain and suffering, and for the loss of the value of her father's guidance.

34.     LaToya Lozoya suffered injuries and damages in the past and in reasonable probability will suffer injuries and damages in the future, including: damages for loss of

consortium, for emotional pain and suffering, and for the loss of the value of her father's guidance.

35.     Arturo Lozoya suffered injuries and damages in the past and in reasonable probability will suffer injuries and damages in the future, including: damages for loss of consortium, for emotional pain and suffering, and for the loss of the value of his father's guidance.

<u>Lost Opportunity for Better Medical Outcome</u>

36.     A person or entity is liable for its wrongful conduct resulting in another's lost opportunity for a better medical outcome.  This lost opportunity is an injury in itself.  If the wrongful actions and omissions as claimed did not cause Arthur Lozoya's injuries, but did cause the lost opportunity to avoid those injuries, Plaintiffs should recover the elements of damages listed above based on the lost opportunity for a better medical outcome.

**Other Matters**

37.     All conditions precedent to Plaintiffs' filing, proceeding with, and recovering in this lawsuit have been performed or have occurred.

38.     As discovery progresses in this lawsuit, Plaintiffs reserve the right to amend their complaint, to assert additional claims and causes of action, and to name additional parties, if necessary.

39.     Plaintiffs request a Jury Trial.

**Prayer for Relief**

40.     Plaintiffs respectfully request that they have judgment against Defendant for general or direct damages; special or consequential damages; prejudgment and post-judgment

interest; costs of suit; and for all other relief, general and special, in law and in equity, to which they are entitled.

Dated:  August 8, 2016.


Respectfully submitted,


__/s/ *Thomas Wood*_____
James H. Wood
Thomas Wood
LAW OFFICE OF JAMES H. WOOD PC
423 6th Street NW
Albuquerque, NM 87102
Tel: (505) 340-3134
Fax: (505) 340-3136
jwood@jameswoodlaw.com
twood@jameswoodlaw.com
*Attorneys for Plaintiffs*